The judgment of the court was pronounced by
Slidell, J.
The plaintiff was the factor of Breaux and Matherne, who were associated in a partnership as sugar planters. The latter is now deceased. The action is for the recovery, from Breaux and the Succession of Matherne, of the sum of $5507 30, the balance of account, with interest at eight per cent from the 17th February, 1849, at which date the'plaintiff strikes his balance. A right of mortgage for this amount is also claimed upon certain lands and slaves.
A variety of questions have been presented on the part of the defendants; which will be separately considered. The facts pertinent to each question will be stated in connection with the legal conclusion.
*506 It is proper first to dissect the account and ascertain what items objected to are improperly charged.
The plaintiff annexed to his petition an account, (marked A.,) commencing in 1847, aud made up on the 29th March, 1848. It is composed on the debit side of various disbursements for plantation supplies, payments made for account of the partnership, and charges of commissions, interest, &c.; and on the credit side, of items stated as nett proceeds of sugar and molasses shipped by the partnership, and allowances of interest from the date of realization. The charges and allowances of interest are at eight per cent. At the foot of this account, after striking a balance of $339 88 as due the plaintiff, is a memorandum of various outstanding acceptances given by him for account of the partnership, and of their note in renewal for $4000, due 3d February, 1849. In the body of the account is the following item : “To amount of interest on renewal of draft of $4000, $520.” The origin of this item is as follows: On the 4th February, 1847, Breaux and Clermendot, (the latter of whom was soon afterwards succeeded in the partnership by Matherne,) being owners of a plantation and slaves, applied to Lalande, a commission merchant, to transact their business as such; to make them advances and disbursements for plantation purposes, during the year ensuing, to an amount estimated at $1000, and to accept for their accommodation, a draft of Breaux, to the order of, and endorsed by Clermendot, dated 4th February, 1847, and payable at one year. To secure these amounts Breaux and Clermendot mortgaged the plantation and slaves. When the draft was about to fall due the drawers were not prepared to pay the draft, and the drawers gave him in renewal their note of $4000 already mentioned. Whether the plaintiff took up the acceptance with his own funds, or by getting the renewal note discounted, does not expressly appear. The disputed item of $520 is acknowledged by plaintiff’s counsel to be composed of a charge of eight per cent interest, (being interest from the date of the note to its maturity,) two and one half for accepting the draft, and two and one half per cent for advancing its amount at maturity.
We do not consider the charge of commission for accepting illegal. We understand the agreement of the parties at the time the draft was given, to have been, that Lalande should give them the benefit of his name as acceptor, to facilitate them in the negotiation of the draft, and that they should pay it at maturity. A merchant thus lending his name lends something which, in the contemplation of the parties, is valuable and beneficial to the person obtaining it, and involves a risk to the party giving it. By accepting, he makes himself primarily liable to the holder, and incurs the risk of being obliged to advance the money if the drawer does not put him in funds. For thus loaning his credit and incurring the risk of inconvenience at the maturity of the bill, the charge is not unreasonable, and is proved to be consonant to usage. There is a lawful consideration passing between the parties, and nothing which involves usuiy. The charge in this particular case must be considered as assented to by the drawers of the bill, as they signed at the foot of the account A, an acknowledgment of its correctness. See Taylor et al. v. Wooton, 19 L. R. 518. 10 L. R. 299.
But, in our opinion, the charge of two and a half per cent commission for advancing, together with eight per cent interest from the date of the advance, stands upon a very different footing. Names do not alter the substance of things. To agree with a party that you will make an advance of money to him, (or to his creditor, holding his draft accepted by you for his accommodation, in considera *507 tion of a commission of two and one-half peí cent, and which draft he has failed to pay,) and that he shall restore first the money, with eight per cent interest from the date of the advance, and besides, a commission of two and a half per cent for advancing, is virtually and substantially to agree to lend him money at an interest of ten and one-half per cent. But, this the law forbids; having fixed eight per cent as the highest rate which can be lawfully stipulated. It must be observed, that this charge of two and one-half per cent for advancing cannot be referred to the trouble or labor of the plaintiff, in conducting the planter’s business. It is not so chai'ged in the account; and it appears on the face of the account, that the factor’s trouble in receiving and selling the crops was compensated by a commission of two and one-half per cent.
We are not informed by the evidence, whether an agreement for eight per cent interest, and .two and a half per cent commission for advancing, was made at the time of making this advance or not. But this is not material. The acceptance and approval by the debtors of the account, was an assent to the charge, and to its payment, by the imputation therein made, of the proceeds of the sales of the crops. The illegality of such a charge, was expressly ruled in Barrett v. Chaler, 2d Ann. 876. See also Taylor v. Wooton, 19 L. R. 518.
But, it is said, that by the imputation of payment, and the acceptance of the account A., Breaux and Matherne were estopped from subsequently contesting it; and counsel rely on the case of Millaudon v. Sylvester, 8 L. R. 267. Poydras v. Turgeau, 14 L. R. 37, &c.
Whatever may have been, under our former laws and jurisprudence, the right or absence of right ,to relief from usurious charges by opening accounts, there can be no doubt upon the point, since the statute of 1844, which declares, that article 2895 of the Civil Code be so amended that the amount of conventional interest shall in no case exceed eight per cent, ¡under pain of forfeitui'e of the entire interest so contracted; and that if any person thereafter shall pay on any contract entered into after the passage of that act,' a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered, within twelve months from the time of such payment. See also Richards v. Fresler, 2d Ann. 265. Haynes v. Cobb, 2d Ann. 364.
With regard to the interest on the $4000, after the expiration of the extension of one year granted upon that debt, we are of opinion that it may be allowed. The original agreement, as shown by the act of mortgage was, that this sum should bear interest at eight per cent after the maturity of the draft, if the drawers did not pay the draft at maturity. This was a valid agreement, and there is nothing to show that there was any agreement at that time, or before the maturity of the draft, to pay in addition two and a half per cent for advancing. Then, the only usury was in the charge of eight per cent per annum, and two and a half per cent commissions for the extension of one year. Of the whole of this usurious interest we deprive the plaintiff. But, this usurious extension for a certain specified time, did not destroy the plaintiff’s right to eight per cent Interest upon the $4000, after the expiration of that time, under the original valid agreement, which was not novated. This is not like the case of a party invoking the aid of the law to give him interest ex mora, when he has violated the law by originally stipulating usurious interest after maturity.
The plaintiff also annexed to his petition an account (marked B.,) which is brought down to the 17th February, 1849, and exhibits a balance of $5507 30, being the amount claimed in this suit, together with eight per cent interest from that date. This account is not shown to have been assented to by the debtors. *508 The only charge for commission for accepting which appears to us .objectionable, is made in these words: “1849. February 3d, note due this day, $4000. Commission for accepting, $100.” This is claimed, ip argument., as commission for endorsing the renewal note. But we have already stated, that it is not proved that the money to take up the $4000 draft was raised by means of the renewal note ; and the inference that it was not, may be fairly claimed by the defendants, from the fact that in the account A. they were charged tyvo and a half per cent on $400,0 for advancing.
The defendants object to a charge of $53 42, as a commission on a certain shipment of sugar, winch the defendants, in violation of their contract, made to another factor. We find the planters in their correspondence, asking the factor to send them plantation supplies, and telling them the state of their crops, and their intention to forward it. If the defendants had fulfilled their duty to their factor, he would have received the shipment, and earned the commission on it. This was one of the considerations for which he agreed to become th.eir factor, and incur liability for them ; and it would be manifestly unjust to deprive the factor of his commissions because of the wilful violation of duty by the principal. A man should not be permitted to take advantage of his own wrong. See Russell on Factors, 164. Thompson v. Packwood, 2d Ann. 624.
The remaining objection is to the charge of eight per cent interest. This is made on the balance of account A- And qn the new items of account B. as they accrued. Interest was also credited to the planters, on proceeds of sales as realized. The charge of interest at eight per pent, on the items lawfully charged in account A., canno tnow be disputed. The defendants are estopped by their written approval of that account. But, their assent to the charge in that account, does not amount to proof of an agreement to pay thereafter interest at the rate of eight per cent, either on the balance of account A., .or upon new items of indebtedness. The law is positive, that conventional interest must be stipulated by a written agreement. See Succession of Durnford, 10 R. R. 495. Barrett v. Chaler, 2d Ann, 875. Mylne v. Thompson, 4th Ann. 210. Harrod v. Lafarge, 12 M. R. 21. 7 L. R. 105.
The proposition that the debt was novated, and the mortgage given to secure the plaintiff, is clearly untenable. Novation is not presumed. The intention to novate must be clear. What stronger evidence could the plaintiff give of his intention not to abandon so important a security than his holding on to the draft ? If the parties had considered the matter otherwise, the draft, which was paraphed to identify it with the act of mortgage, would have been given up to enable the debtors to raise the mortgage. Left in the hands of the plaintiff, it was his voucher that lje had himself paid if at maturity. The pre-existenf obligation must be extinguished, says the code; otherwise there is no novation; if it be only modified in some parts, and any stipulation of the original obligation be suffered to remain, it is no noyation. C. O. 2183. The case is completely covered by what is said by Pothier, Obligations, § 559 : “ Si depuis la dette eontractée, il a été passé quelque aete entre le créancier et le débiteur, par lequel on aurait accordé un terme pour le paiément, ou par lequel on serait convenu d’un nouveau lieu pour le paiement, on par lequel on aurait accordé au débiteur la faculté de payer á une autre personne qu’un créancier, ou de payer une chose á la place de eelle qui est düe, ou méme par lequel le débeiteur se serait obligé de payer une plus grande somme, on d’en payer une moindre á. laquelle le créancier aurait bien voulu se restreindre; dans tous ces cas, et nutres semblables, suivant nocre principe que la novation ne se présume pas, il *509 faut decider qu’il n’y ,a pas de novation, et que les parties ont settlement voulu modifier, dimineur ou augmenter la dette plutót que l’éteindre pour y en substituer une nouvelle, si elles ne s’en sont pas expliquées.”
We think the district judge was justified by the evidence in concluding, that it was the understanding of the parties, that the plaintiff upon paying the Leftwich claims was to be subrogated to the rights of mortgage, by which these claims were secured. Moreover, the plaintiff was a second mortgagee of a portion of the mortgaged property.
It is therefore decreed, that the judgment of the district court be reversed. And it is further decreed, that the said plaintiff recover from the said Jacques P. Breaux, and from the succession of Joseph Matherne, in solido, the sum of $4009, and interest thereon at the rate of eight per centum per annum, from the 3d day of February, 1-849, until paid, and costs of this suit in the court below; and that for the sums and interest aforesaid, the said Lalande be recognized as having a conventional mortgage upon all and singular the property described in the act of mortgage, before Hermann, notary, dated 4th February, 1847, whereof a copy is on file in this cause.
And it is further decreed, that the said plaintiff recover of Jaques P. Breaux, and from the succession of Joseph Matherne, in solido, the sum of $919 32, with interest on the sum of $905 49, part thereof at the rate of eight per centum per annum, from the 17th day of February, 1849, until paid, and with subrogation to all and singular the rights of mortgage, conventional and judicial, heretofore held by Mrs. Mary Ann Leftwich administratrix, Joel Leftwich and Margaret N. Lindsay, wife of Eugene A. Sherbourne, arising out of an act of mortgage before Louis Petit, recorder and ex-officio notary for the parish of Iberville, dated 4th June, 1847, whereof a copy is of record in this cause, and arising out of inscriptions of the judgments in favor of said Mrs. Leftwich, Joel Leftwich and Sherbourne, in the record of this cause more particularly mentioned and described,
And, it is further decreed, that the said plaintiff pay the costs of this appeal.